# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DEMETRIUS M. BOYD,**

    **Plaintiff,**

**v.**                                                            Case No. 15-C-832

**JONI SHANNON-SHARPE, et al.,**

    **Defendants.**

---

## DECISION AND ORDER

Demetrius Boyd, who is representing himself, is currently incarcerated at the Wisconsin Secure Program Facility ("WSPF"). He filed this lawsuit pursuant to 42 U.S.C. §1983 and was allowed to proceed on his claims that defendants Anthony Broadbent, Sherri Govier, Stacey Hoem, Joni Shannon-Sharpe, David Gardner, Gary Boughton, and Mark Kartman placed him in administrative confinement in violation of the Fourteenth Amendment and in retaliation for filing inmate complaints in violation of the First Amendment. I also allowed plaintiff to proceed on a claim that Burton Cox, Jr. was deliberately indifferent to his medical needs in violation of the Eighth Amendment and that Tracy Johnson was deliberately indifferent to his mental health needs, also in violation of the Eighth Amendment.

The defendants filed a motion for summary judgment on March 14, 2016.[1] They argue, among other defenses, that plaintiff failed to exhaust his due process, retaliation,

---

[1] Defendants also filed a motion for leave to file a supporting brief that exceeds the page limitation and additional proposed findings of fact above the limitation. Defendants argue they need to exceed the limits because of the number of defendants and the nature of plaintiff's claims. I will grant defendants' motion.

and deliberate indifference to medical needs claims. They also argue that Johnson was not deliberately indifferent to plaintiff's mental health needs. For the reasons discussed in this decision, I grant defendants' motion and dismiss this case.

## I.  RELEVANT FACTS[2]

Plaintiff has been incarcerated at WSPF, a maximum security institution, since March 6, 2013. Prior to WSPF, he was housed at Waupun Correctional Institution.  He was transferred to WSPF because of his conduct. Since his arrival at WSPF, plaintiff has been housed in the Restrictive Housing Unit, formerly known as the Segregation Unit.

On February 26, 2013, prior to his transfer, an early program review committee hearing was held at Waupun to determine the most appropriate placement for plaintiff at WSPF. Waupun staff recommended the following:

> Recommend Max/[WSPF] due to accepted transfer to [WSPF]. The inmate's conduct is deplorable to say the least. He exhibits no respect for authority, rules, policies, and society in general. He also presents as someone who has no interest in **learning** to cope with everyday disappointments and frustrations. He is serving a very long sentence (MR/ES is 1/14/47), but he also has a lengthy criminal history. Because of his current level of behavior and misconduct, he seems best suited to [WSPF] since there are no contraindications.

(Docket #60 at 16) (emphasis in original).

---

[2] Facts are taken from Defendants' Proposed Findings of Fact (Docket #60), which are deemed admitted for the purposes of deciding summary judgment because plaintiff failed to respond to them as required by Civil Local Rule 56(2). Additional facts are taken from plaintiff's sworn response to defendants' motion for summary judgment (Docket #76) and **Error! Main Document Only.**plaintiff's sworn amended complaint (Docket #12), which the Court of Appeals for the Seventh Circuit has instructed district courts to construe as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

2

As a result of the hearing, the program review committee unanimously recommended maximum custody at WSPF. As such, plaintiff was transferred to WSPF in disciplinary separation status, so he was placed in the Restrictive Housing Unit upon arrival. Disciplinary separation is a punitive status. Inmates who receive disciplinary separation have proven themselves to be noncompliant with the institution's rules of conduct. Non-compliant behavior has consequences to maintain the safety, security, and order of the institution.

Plaintiff also was placed on administrative confinement tracking, meaning that he would be reviewed every thirty days to monitor his adjustment and behavior in a segregated setting to determine if he would need to be placed on administrative confinement once his disciplinary separation sentence was completed.

A. <u>Administrative Confinement</u>

Administrative confinement is an involuntary, nonpunitive status for the restrictive housing confinement of an inmate whose presence in general population poses a serious threat to life, property, self, staff or other inmates, or to the security or orderly running of the institution. An inmate may be placed in administrative confinement only after review by the Administrative Confinement Review Committee (the "Committee"). The Committee re-reviews inmates in administrative confinement at least once every six months.

The Committee is made up of three members appointed by the warden. The Committee consists of one member from security, one from treatment, and one supervisor who serves as the hearing officer. An inmate may be placed in administrative

3

confinement only if the Committee unanimously agrees on the placement. If there is not unanimous agreement, the final decision is left to the warden.

Inmates have the right to appeal the Committee's decision to the warden within ten days of the decision, and they have the right to appeal the warden's decision to the Division of Adult Institutions ("DAI") Administrator within ten days of the warden's decision.

On July 8, 2015, a Committee consisting of defendants Govier, Hoem, and Broadbent held an administrative confinement hearing for plaintiff to decide whether he should be placed in administrative confinement for his past misconduct. Plaintiff was present at the hearing with an advocate, and he submitted a written and oral statement. Plaintiff also requested the attendance of defendants Gardner and Shannon-Sharpe, whom he questioned as witnesses at the hearing.

The Committee unanimously agreed that plaintiff should be placed in administrative confinement. Plaintiff appealed the Committee's decision to the warden, defendant Boughton, on July 9, 2015, arguing that the double jeopardy clause precluded him from being placed into administrative confinement based on his past misconduct. Plaintiff did not argue that placing him in administrative confinement violated his due process rights or that his placement was a result of retaliation. Boughton affirmed the Committee's decision on July 21, 2015. Plaintiff did not appeal the warden's decision to the DAI Administrator in accordance with Wis. Admin. Code § DOC 308.04(9).

However, on July 13, 2015, plaintiff filed an inmate complaint, which stated in full, "Administrative Committee using administrative confinement as a form of retaliation

because I am challenging criminal convictions[.] At the July 8, 2015 Administrative Committee." (Docket #50 ¶168.) The complaint examiner rejected the complaint in accordance with Wis. Admin. Code § DOC 310.11(5)(c) because the "inmate [did] not allege sufficient facts upon which redress may be made." (*Id.* at ¶169.) Plaintiff appealed the rejection to the reviewing authority, who affirmed the rejection. Nowhere did plaintiff complain that his due process rights were violated or that there were procedural errors in the administrative confinement review hearing or process.

B. Medical Needs

Defendant Cox is the primary clinician at WSPF. He was aware that plaintiff had a pre-existing gunshot injury. On June 15, 2015, after meeting with plaintiff and acknowledging his pain complaints, Cox ordered x-rays of plaintiff's right ankle and both knees. Cox reviewed the x-rays on June 22, 2015; nothing significant was noted. Because of the unremarkable ankle/knee images, Cox did not follow up with plaintiff, nor did he believe that a no-use restriction on leg restraints was warranted.

On August 29, 2015, plaintiff met with a health services nurse (not a defendant) and complained that his right ankle had been sore/swollen after recreation on August 27. Plaintiff denied current pain except for during use of the leg restraints. Plaintiff moved without difficulty and refused pain medication and ice. The nurse reviewed the June x-ray report with plaintiff and told him that everything appeared normal.

Plaintiff never filed an inmate complaint relating to the treatment of his ankle pain prior to initiating this lawsuit. He filed six inmate complaints on this topic *after* he filed this lawsuit.

5

C. <u>Mental Health Needs</u>

Psychological staff conduct routine "rounds" of inmates on the restrictive housing unit, which are weekly brief contacts conducted at the inmate's cell front to ascertain the overall welfare of the inmate, receive requests, address questions, and determine if there is a need for services. Inmates who want to be seen by psychological services may submit a psychological services request.

If an inmate on segregated status indicates during rounds or through a written psychological services request form that he would like to be seen for mental health services, his assigned clinician may schedule a time to see him out of cell. The timeframe for an appointment depends on both the severity of the inmate's health issues and the caseload of the clinician. An inmate in restrictive housing will typically be seen within one to three weeks of a request.

Defendant Hoem was plaintiff's assigned primary psychological services care clinician from November 14, 2014, until December 23, 2014, when plaintiff stated that he no longer wished to meet with Hoem for his individual sessions. Psychological staff continued to perform clinical rounds in restricted housing on a weekly basis. In March and April 2015, after receiving correspondence from plaintiff, psychological services staff assigned Ms. Mink (not a defendant) to see plaintiff for individual sessions.

Defendant Johnson is the psychological services supervisor; she is not an assigned clinician. She supervises all psychological services staff and reviews and approves the psychological associates' treatment notes. Johnson has never been plaintiff's assigned clinician at WSPF. Although she does not typically meet with inmates

6

for counseling, there are occasions when she may meet with an inmate or conduct segregation rounds.

Johnson saw plaintiff during a weekly segregation round on May 28, 2013. Plaintiff said he was "fine" and did not report any mental health concerns. Johnson met with plaintiff on June 19, 2013, cell side because he submitted a psychological services slip on June 16, 2013. Johnson noted that, aside from his perception of officer disrespect, plaintiff did not report or present with any mental health difficulties or concerns.

On August 19, 2013, Johnson saw plaintiff cell side for a review of his observation placement after he reported thoughts of self-harm the day before. In her clinical note, Johnson wrote, "In describing suicidal statements he made he stated, 'I guess I wanted some attention' and 'I was also feeling destructive.' Mr. Boyd stated he was upset after having been placed on a paper and property restriction. He commented 'I'm my worst enemy. I make bad decisions.' He currently denied having ideation or intent to harm himself." (Docket #60 ¶85.)

On March 17, 2015, plaintiff submitted a psychological services request complaining about a perceived conflict of interest between the assigned clinician and him. He did not write that he would like to speak to Johnson. In her role as supervisor, she responded on March 19, 2015, relaying that his complaints were noted. On April 15, 2015, plaintiff submitted another psychological services request asking why Johnson didn't respond directly to his requests. She responded,

> Mr. Boyd, PSU staff routinely respond to requests addressed to me, as I'm only at [WSPF] a couple of days per week, in order to give a prompt response. If you are asking for an out of cell PSU

7

Case 2:15-cv-00832-LA   Filed 05/16/16   Page 7 of 15   Document 80

> appointment, you may let your assigned clinician know during segregation rounds or you may write requesting an appointment and you will be scheduled to meet with your assigned unit clinician. Past requests you have written were more commentary in nature and did not seem to be requesting services. Additionally, you refused your last out of cell appointment with Dr. Hoem."

(Docket #60 ¶115.)

In the few interactions Johnson had with plaintiff, he never mentioned the impact of segregation on his mental health.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

A. <u>Exhaustion of Administrative Remedies</u>

According to the Prison Litigation Reform Act ("PLRA"), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. <u>Smith v. Zachary</u>, 255 F.3d 446, 450-51 (7th Cir. 2001).

8

Case 2:15-cv-00832-LA    Filed 05/16/16    Page 8 of 15    Document 80

Wis. Admin. Code § DOC 308 deals with the decision to place an inmate in administrative confinement. Section 308.04(9) states that, after a decision is made to place an inmate in administrative confinement, "[a]n inmate may appeal the [Committee's] decision to the warden within 10 days of the date of the decision and again to the administrator within 10 days of the warden's decision."

Wis. Admin, Code § DOC 310 informs inmates of the process by which they may raise grievances. First, an inmate must file an offender complaint with the institution's complaint examiner. § DOC 310.07, 310.09. If an inmate is dissatisfied with a decision or if the complaint is rejected, he may, within ten calendar days after the decision, appeal the decision or the rejection. § DOC 310.13(1), 310.11(6). The complaint examiner has thirty-five working days from receiving an appeal of a decision to make a recommendation to the secretary. § DOC 310.13(6). The secretary then has ten working days from the date he received the recommendation to make a decision. § DOC 310.14(1).

If a court determines that an inmate failed to complete *any* step in the exhaustion process prior to filing a lawsuit, the court must dismiss the plaintiff's complaint. *Perez v. Wis. Dept. of Corrs.,* 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits.").

Here, defendants assert that plaintiff did not exhaust his due process and retaliation claims against defendants Broadbent, Govier, Hoem, Shannon-Sharpe, Gardner, Boughton, and Kartman before filing his lawsuit. The undisputed record supports this assertion, and the plaintiff does not dispute it.

9

Once the Committee decided to place plaintiff in administrative confinement, he had ten days to appeal the decision to the warden, which plaintiff did on July 9, 2015. Boughton affirmed the decision on July 21, 2015, which meant that plaintiff had until July 31, 2015, to appeal the warden's decision to the administrator. Plaintiff never filed the final appeal.

Instead, on July 13, 2015, plaintiff filed a grievance, arguing that the Committee had used administrative confinement as a form of retaliation (at no time did plaintiff complain that he had been denied due process). The problem with plaintiff's approach is that he forfeited his right to challenge the Committee's decision when he failed to appeal the warden's decision as required by § DOC 308.04(9). It is conceivable that an inmate could file a grievance about the Committee's conduct that did not undermine the Committee's placement decision. In those narrow circumstances, an inmate could fully exhaust a claim through the grievance process without having to first exhaust the appeal process set forth in § DOC 308.04(9).

Here, however, had plaintiff's grievance regarding retaliation been affirmed, it would have necessarily invalidated the Committee's placement decision. Plaintiff's opportunity to challenge the Committee's placement decision was to appeal their decision to the warden and then to appeal the warden's decision to the DAI administrator. When he chose not to appeal the warden's decision under § DOC 308.04(9), he forfeited his right to timely challenge the Committee's placement decision. Plaintiff may not backdoor his challenge through the grievance process when he should have made that challenge directly under § DOC 308.04(9). I conclude that plaintiff did

10

not exhaust the available administrative remedies on his due process and retaliation claims, so I must dismiss those claims.

Defendants also argue that plaintiff failed to exhaust his claim that Cox was deliberately indifferent to his medical needs when he allegedly failed to address the ankle pain caused by the leg restraints. While plaintiff did file grievances about his leg restraints, those grievances focused on the decision that leg restraints were necessary. None of the grievances filed *before* plaintiff filed his lawsuit had anything to do with medical issues resulting from the leg restraints. Plaintiff began to file grievances along those lines only after he filed his lawsuit. Because a plaintiff is required to exhaust his administrative remedies prior to filing a lawsuit, I must also dismiss plaintiff's deliberate indifference claim against Cox.

B. Deliberate Indifference

The only claim that plaintiff exhausted before he filed his lawsuit is that Johnson was deliberately indifferent to his mental health needs. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (i.e., that the needs be sufficiently serious) and a subjective element (i.e., that the officials act with a sufficiently culpable state of mind). *Id.* A plaintiff must show that the defendant had "*actual* knowledge" that he was "at risk of serious harm." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 778 (7th Cir. 2014) (emphasis in original); *Belbachir v. County of McHenry*, 726 F.3d 975,

982 (7th Cir. 2013) (affirming dismissal of nurse because she had no knowledge that prisoner was suicidal).

In plaintiff's amended complaint, he alleged that he had "expressed grave concern to P.S.U. supervisor Johnson on the impact segregation has taken a toll on the plaintiff mentally causing the plaintiff to dwell in utter mean and hateful thoughts which cause the plaintiff to appear aggressive, mean, bitter, and miserable." (Docket #12 at 6.) In moving for summary judgment, Johnson declared, under penalty of perjury, that she was never plaintiff's assigned clinician for one-on-one sessions and that on the few occasions she informally spoke to plaintiff during rounds or in response to a psychological request form, plaintiff never referenced the impact of segregation on his mental health. (Docket #67 ¶17, 33.)

Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *see George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). In addition, a defendant can be liable only for harm of which they are subjectively aware. *See Vazquez v. Breaemer*, 586 Fed.Appx. 224, 226 (7th Cir. 2014) (unpublished).

Here, Johnson states that plaintiff never informed her of the impact segregation was having on his mental health. As support, she points to notes from the few, brief interactions she had with plaintiff. These notes reveal general complaints about plaintiff's stress and anger; however, none of them indicate that plaintiff attributed these feelings to his placement in segregation and/or administrative confinement. Plaintiff does not respond to Johnson's statements or the evidence supporting her statements.

12

Instead, he merely affirms the allegations in his amended complaint. (See Docket #76 at 11.)

Summary Judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). It was up to plaintiff to present record evidence sufficient to create a genuine dispute of material fact that Johnson was deliberately indifferent to his complaints about the impact of segregation on his mental health. Plaintiff provides no specifics at all, no dates of contact with Johnson, no descriptions of conversations with Johnson, no copies of psychological request forms. All plaintiff relies on are the allegations in his amended complaint. However, without a factual basis to support those allegations, plaintiff cannot prevent summary judgment. *See Scarver v. Litsher*, 434 F.3d 972, 975-77 (7th Cir. 2006) (plaintiff "failed to cite evidence to overcome the defendants' denials that they knew these conditions were making his mental illness worse.") I grant defendants' motion for summary judgment on this claim as well.

C. <u>Electronically Signed Declarations</u>

Finally, plaintiff argues that defendants' motion must be denied because all of the declarations filed in support of their motion were electronically signed rather than signed with wet-ink, handwritten signatures.

Section II(c)(2) of the court's Electronic Case Filing Policies and Procedures states,

> If the original document requires the signature of a non-attorney, the filing attorney must: (1) obtain the signature of the non-attorney on the original document; (2) electronically file the document

indicating the signatory in the following format: "s/Signatory Name"; (3) maintain the original document in paper form until one year has passed after the time period for appeal expires; and (4) provide the original document for review upon request of the judge.

(available at http://www.wied.uscourts.gov/e-filing/ecf-policies-and-procedures#Signatures.)

When defendants filed their supporting declarations with electronic signatures rather than wet-ink signatures, they were merely following the court's electronic filing policies and procedures. Plaintiff's argument is without merit.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for leave to file excess pages (Docket #58) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #57) is **GRANTED**. The Clerk shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under

Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 16th day of May, 2016.

                                              s/ Lynn Adelman
                                          _____
                                          LYNN ADELMAN
                                          District Judge